**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROGER D. MORTIMER, individually
and as representative of the class
of persons defined in averment 15;
DEANE DANA; DON KNABE,
          *Plaintiffs-Appellants,*

          v.

LEROY D. BACA,
          *Defendant-Appellee.*

No. 07-55393

D.C. No.
CV-00-13002-DDP

OPINION

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted
August 7, 2009—Pasadena, California

Filed February 5, 2010

Before: Kim McLane Wardlaw and Consuelo M. Callahan,
Circuit Judges, and Ralph R. Beistline,* Chief District
Judge.

Opinion by Judge Callahan

---

*The Honorable Ralph R. Beistline, United States District Judge for the
District of Alaska, sitting by designation.

2083

**COUNSEL**

Marion R. Yagman (argued) and Joseph Reichmann, Yagman & Yagman & Reichman, Venice Beach, California, for the plaintiffs-appellants.

David D. Lawrence, Michael D. Allen (argued), and Justin W. Clark, Franscell, Strickland, Roberts & Lawrence, O.C., Glendale, California, for the defendant-appellee.

---

**OPINION**

CALLAHAN, Circuit Judge:

Plaintiffs brought this action under 42 U.S.C. § 1983 against the Los Angeles County Sheriff, Leroy Baca ("Baca"), in his official capacity. Plaintiffs allege that their civil rights were violated when they were kept in custody by the Los Angeles County Sheriff's Department ("LASD") for periods of time ranging from twenty-six to twenty-nine hours after the court had authorized their releases, and that their over-detentions were the result of a policy of deliberate indifference to their constitutional rights. We determine that our prior opinion in this litigation, *Berry v. Baca*, 379 F.3d 764 (9th Cir. 2004), did not preclude the district court from considering defendant's motion for summary judgment on its merits, and that the court properly granted defendant's motion for summary judgment because the proffered evidence would not support a finding of deliberate indifference.

I

As noted in our prior opinion, plaintiff Roger Mortimer was acquitted at 11:45 a.m. on August 14, 2000, the Superior Court authorized his release, and he was released on August 15, 2000 at 4:57 p.m. *Berry*, 379 F.3d at 767. The Superior

Court ordered plaintiff Anthony Hart's release from jail on August 17, 2000, and he was released on August 18, 2000, at 2:02 p.m., just over twenty-nine hours after the court authorized his release. *Id.* The Superior Court authorized the release of plaintiff Rodney Berry on February 1, 2001 at 11:30 a.m., and he was released on February 2, 2001, at 2:02 p.m. *Id.* Plaintiff S.A. Thomas was held in the Los Angeles County Jail until June 23, 2004, but claims that he should have been released two days earlier on June 21, 2004. Plaintiffs filed their actions in the United States District Court for the Central District of California alleging "a policy of deliberate indifference to their constitutional rights that resulted in unlawful periods of over-detention." *Id.* at 766. Their cases were consolidated before the district court. *Id.*

A. *Berry v. Baca, 370 F.3d 764.*

On May 29, 2003, the district court granted Baca's motion for summary judgment based on the Ninth Circuit's decision in *Brass v. County of Los Angeles*, 328 F.3d 1192 (9th Cir. 2003). Plaintiffs appealed and we reversed and remanded. *Id.* at 773. We first set forth the applicable law and explained the district court's ruling as follows:

> In order to hold Baca liable under § 1983, plaintiffs must demonstrate that " 'action pursuant to official municipal policy of some nature caused a constitutional tort.' " *Brass,* 328 F.3d at 1198 (quoting *Monell,* 436 U.S. at 691 . . .). We have stated that "a local governmental body may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights." *Oviatt v. Pearce,* 954 F.2d 1470, 1474 (9th Cir. 1992) (citing *City of Canton v. Harris,* 489 U.S. 378, 388, . . . (1989)). However, the policy of inaction must be more than mere negligence, *see Daniels v. Williams,* 474 U.S. 327, 333-36, . . . (1986); it must be a conscious or deliberate choice among various alterna-

tives. *See Lee v. City of Los Angeles,* 250 F.3d 668, 681 (9th Cir.2001).

In order to impose liability based on a policy of deliberate inaction, the "plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy [was] the 'moving force behind the constitutional violation.' " *Oviatt,* 954 F.2d at 1474 (quoting *City of Canton,* 489 U.S. at 389-91, . . . ).

The district court did not discuss this four-step showing, because it did not address the plaintiffs' claims that the County's policies amount to a policy of deliberate indifference to their constitutional rights. Instead, the district court found that it "is bound by the holding in *Brass* and finds that the County's challenged policies did not result in a violation of the plaintiffs' constitutional rights."

*Id.* at 767.

We then found that *Brass* was distinguishable. We noted that "Brass's primary claim focused on the County's policy of releasing prisoners pursuant to court order only after the completion of processing all inmates scheduled for release on that day." *Id.* at 768. We explained:

Here, in contrast to *Brass,* the plaintiffs do not limit their challenge to the County's specific policies. Rather, as argued in their briefs to this Court, they challenge the policy "*in toto* . . . that simply delays all releases until the system, in its sweet time, and with the resources it chooses . . . is ready to make releases." Stated another way, the plaintiffs in this case challenge the implementation of the County's

> policies, rather than the specific policies themselves. They claim that the County's unreasonably inefficient implementation of its administrative policies amounts to a policy of deliberate indifference to their constitutional rights.
>
> While on first glance this may appear a subtle difference, in fact there is a crucial distinction between the challenge to specific policies in *Brass* and the challenge to the implementation of the policy "in toto" in this case. It cannot be the case that, if the County's system of administratively processing releases took several days or weeks to complete, its policy could not be challenged as one of "deliberate indifference" simply because each of the administrative procedures employed is theoretically reasonable. As a matter of law, the County's system of administrative processing cannot be immune from allegations that, in practice, it amounts to a policy of deliberate indifference. *Brass* did not raise this type of challenge, because Brass focused his challenge upon the County's release policies themselves. Tellingly, nowhere in the *Brass* opinion does the panel discuss the "deliberate indifference" line of *Monell* cases, because this was not the claim at issue. Here, in contrast, deliberate indifference is precisely the claim at issue.

*Id*. at 768.

We then found the case to be more closely related to *Oviatt v. Pearce*, 954 F.2d 1470, where the plaintiff alleged that he had been held without arraignment for 114 days because the county's "policy regarding missed arraignments constituted a policy of deliberate indifference to the inmates' constitutional rights." *Berry,* 379 F.3d at 768-69. The panel noted that *Berry* concerned only 29 hours of over-detention rather than 114 days, and that the defendants had offered "more substantial

justifications for its delay," but concluded that at the summary judgment stage the *Oviatt* framework applied. *Id.* at 769.

A the end of the opinion, the panel returned to "*Oviatt*'s four-step framework for resolving *Monell* claims of deliberate indifference." *Id.* at 773. The court commented:

> In order to impose liability based on a policy of deliberate inaction, the plaintiff must establish that he possessed a constitutional right of which he was deprived. Here, the plaintiffs possessed a constitutional right to freedom from imprisonment a reasonable time after they were judicially determined to be innocent of the charges against them. *See Oviatt,* 954 F.2d at 1474 (stating that "[t]he Supreme Court has recognized that an individual has a liberty interest in being free from incarceration absent a criminal conviction"); *cf. Brass,* 328 F.3d at 1200 (recognizing that the plaintiff "may have had a due process right to be released within a reasonable time after the reason for his detention ended").

> Step two of *Oviatt* — the existence of a municipal policy — is uncontested. Both parties agree that the County has a set of administrative policies that guide releases after judicial determinations of innocence. Both parties also agree on step four: these policies resulted in delays in the release of each of the plaintiffs, ranging from twenty-six to twenty-nine hours after their court-ordered release.

> Step three of *Oviatt* remains: did this set of policies — or, alternatively, the lack of policies to expedite the process — amount to a policy of deliberate indifference to the plaintiffs' constitutional rights? This question turns on whether the County's implementation of its policies was reasonable in light of the delay that resulted. Baca concedes that he knew that

the implementation of the County's policies was resulting in delays of up to 48 hours. Therefore, if the delays were not reasonably justified, the § 1983 claim against the County has merit, because the County was continuing to adhere to a policy that it knew resulted in unlawful detentions without reasonable cause. *See Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 407, . . . (1997) We find that this question of reasonableness is properly conceived of as a jury determination.

*Id.*

B. *Proceedings on remand.*

On remand both sides submitted evidence in the form of exhibits and declarations. The district court found that defendant's evidence showed that the number of over-detentions had been substantially reduced. The total number of over-detentions of inmates in the County system of 24 hours or more peaked in 1997, and declined every subsequent year through 2004. Specifically, the defendant offered evidence that the numbers declined from 248 over-detentions in 1997 to 9 in 2004. During the time period in issue, there were 50,706 inmate releases with only 43 over-detentions of 24 hours or more.

The defendant presented evidence that the LASD had instituted several measures to reduce the number of over-detentions. These included the "In-Court Release" program, which began in 2001. This program allows inmates to be released at the courthouse immediately following a judge's release order without returning to the jail, provided that a prompt check of the database does not reveal any other warrants or holds. Another measure was the "Greenband" program in which inmates who could not be released at the courthouse due to a need to give a DNA sample or have a medical examination were given a green wristband and

returned to the Inmate Reception Center ("IRC") only briefly to perform the procedure before release. A third measure was the Early Release Program, which begins the process for releasing inmates 72 hours before the expiration of their sentences, and often resulted in their early release.

In addition, Baca proffered evidence that the LASD had created a database called the "Over-Detention and Erroneous Release" tracking system ("ODER") to keep track of recorded potential over-detentions. The ODER system contains records of all inmates held longer than 24 hours after their release is entered into the Automated Justice Information System ("AJIS") database, although not all of these over-detentions are deemed improper on further review. Defendant also asserted that in order to reduce over-detentions, the LASD had adopted a 26-week training program for new employees, and that it tests on a daily basis the pneumatic system that delivers documents related to inmates' releases.

Plaintiffs offered several items in opposition to Baca's motion for summary judgment. First, they proffered the testimony of Captain Charles Jackson, who headed the Inmate Reception Center of the county jail from 1998 to 2000, that during his tenure clerks at the IRC were given a day or two to record potential over-detentions in their log book. Second, they offered testimony from Patricia Bickley-Jones, a clerk at the IRC, that she was required to keep a log book of over-detentions, but that she never received instructions as to "what the reason or reasons are, if any for listing when someone might have been over-detained." She indicated that she would typically mark an inmate in the log book as a potential over-detention if the inmate had been detained "a day over." Plaintiffs also offered supervisor "packets" or reports for all over-detentions from 2000 to 2005. The numbers of potential over-detentions noted on these reports were higher than Baca's numbers although they also reflected the substantial decrease of over-detentions to a total of 71 in 2005. Plaintiffs stressed that very few of the recorded over-detentions were for a

period of more than 24 hours, but less than 48 hours, and asserted that this indicated that 24 to 48 hour over-detentions were under-recorded.

The district court granted Baca's motion for summary judgment. It noted that even construing any ambiguities in plaintiffs' favor, "plaintiffs' own exhibit shows that the total number of potential over-detentions listed in ODER and the number of packets presented are very close." It further noted that the relatively low number of two day over-detentions was logical in light of the In-Court Release and Greenband programs. These programs were in effect "as part of an injunction in *Vanke v. Block* (CV 98-4111)."[1] Thus, plaintiffs had not provided the court "with sufficient ambiguity to cast doubt on the Sheriff's numbers."

The district court discounted the testimony of Captain Jackson and Ms. Bickley-Jones. Capt. Jackson left his post as head of IRC in April 2000; thus his understanding of the procedures "is before the injunction in *Vanke*, before early release, In-Court Release and Greenband programs, and before the relevant class period." The court noted that Ms. Bickley-Jones' deposition testimony was heavily excerpted in plaintiffs' exhibit and concluded that it offered no indication that there was a system of deliberate indifference.

The district court explained its grant of summary judgment as follows:

---

[1]In *Vanke*, the district court issued a preliminary injunction against the LASD in 1998 concerning practices that allegedly resulted in over-detention of pre-trial detainees. In April 2001, the district court denied the plaintiffs' motion to convert the preliminary injunction into a permanent injunction. The district court eventually awarded attorneys' fees to plaintiffs' attorney. *Vanke v. Block*, 2002 WL 1836305 (C.D. Cal. 2002). On appeal, the Ninth Circuit reversed the award of attorneys' fees. *Vanke v. Block*, 77 Fed. Appx. 948 (9th Cir. 2003).

The Court finds that the Sheriff has shown the absence of a material issue of fact. The LASD processes tens of thousands of detainees every year. For the class period, nearly 51,000 individuals were released. Each of these individuals has court-related and administrative paperwork that must be processed in order to ensure that the release was proper. Not only has the Sheriff taken steps since *Vanke* to reduce the number of potential overdetentions, the number itself has dramatically decreased. As a matter of law, the Sheriff's implementation of polic[ies] since the *Vanke* injunction to effectuate 51,000 releases during the class period, of which 43 are potential overdetentions, is reasonable and cannot constitute a *Monell* deliberate indifference claim.

Plaintiffs filed a timely notice of appeal from the district court's order granting summary judgment in favor of the defendant.

## II

This appeal raises two questions. First, whether our prior opinion in *Berry* required that the district court allow the case proceed to a jury. Second, if our prior opinion did not foreclose the district court's consideration of the motion for summary judgment on its merits, whether the district court properly granted summary judgment in favor of the defendant.

A.  Berry *did not require that the district court allow plaintiffs' claims to be presented to a jury.*

Although *Berry* concludes with the statement "[w]e find that this question of reasonableness is properly conceived of as a jury determination," both a careful review of the opinion and an appreciation of Ninth Circuit precedent support a

determination that the district court on remand properly considered Baca's motion for summary judgment on its merits.

In the context of the entire opinion, the "question" in the cited sentence appears to be whether the delays were unreasonable (and hence violated plaintiffs' constitutional rights) and not whether defendant had a policy of deliberate indifference. Most importantly, in *Berry* we recognized that the district court had not addressed "the plaintiffs' claims that the County's policies amount to a policy of deliberate indifference."[2] 379 F.3d at 767. Accordingly, the record before us in *Berry* was not sufficiently developed for us to determine as a matter of law that there were material facts concerning the alleged policy of deliberate indifference that precluded summary judgment. *Berry*'s focus on whether the delays might be unreasonable, rather than whether the defendant had a policy of deliberate indifference, is also reflected in other parts of the opinion. For example, the panel comments that "[i]t may very well be that a reasonable juror would conclude that, given the necessary administrative tasks and voluminous demands on the county, the delays at issue were justified," and concludes that "this is a factual determination that is appropriately left to the jury to decide." *Id.* at 771. Thus, *Berry* did not foreclose the district court on remand from reviewing defendant's proffered evidence concerning deliberate indifference and ruling on the motion for summary judgment on its merits.

[1] The conclusion that the district court could consider the

---

[2]The court's specific comment was:

> The district court did not discuss [the *Oviatt*] four-step showing, because it did not address the plaintiffs' claims that the County's policies amount to a policy of deliberate indifference to their constitutional rights. Instead, the district court found that it "is bound by the holding in *Brass* and finds that the County's challenged policies did not result in a violation of the plaintiffs' constitutional rights."

379 F.3d at 767.

motion for summary judgment on the merits is supported by our interpretation of "law of the case." Generally, "law of the case" does not apply to issues or claims that were not actually decided. 18 James Wm. Moore et al., *Moore's Federal Practice* ¶ 134.20[4] (3d ed. 2009); *see United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1186 (9th Cir. 2001) ("The doctrine does not apply to issues not addressed by the appellate court."); *Hegler v. Berg*, 50 F.3d 1472, 1475 (9th Cir. 1995) ("The doctrine, however, applies only to issues considered and actually decided by the first court.").

**[2]** Because we recognized in *Berry* that the district court had not addressed the evidence of deliberate indifference, comments in the opinion concerning deliberate indifference do not amount to an actual decision as to the sufficiency of the evidence. To hold otherwise would be inequitable and inefficient. Defendant would be prejudiced. Because the district court did not address the evidence of deliberate indifference, the defendant had no reason to present his facts and arguments on this issue to the Ninth Circuit. Moreover, a contrary holding arguably would force a district court to allow the issue to go to the jury even though the jury could not make a factual finding in favor of the plaintiffs. If the jury made a factually unsupported finding, the district judge would be compelled to either direct a verdict on the issue or grant judgment notwithstanding the verdict.

**[3]** Finally, even if "law of the case" were otherwise construed to limit the district court's options, we have recognized an applicable exception. In *Minidoka Irrigation Dist. v. Dep't of Interior*, 406 F.3d 567 (9th Cir. 2005), we reiterated that "the law of the case doctrine is subject to three exceptions that may arise when "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *Id*. at 573 (citing *Old Person v. Brown,* 312 F.3d 1036, 1039 (9th Cir. 2002)). *See also Hegler*, 50 F.3d at 1475

(same); *Moore's Federal Practice* ¶ 134.22[2][b]. Here, even though there was not a trial, the third exception applies and allows the district court to consider the motion for summary judgment on its merits. There was considerably more and different evidence before the district court in 2007, when it granted the motion for summary judgment that is at issue in this appeal, as compared to the record before the court in 2002 which was the record reviewed in *Berry*.

We conclude that nothing in *Berry* precluded the district court from considering defendant's new motion for summary judgment on its merits because (1) *Berry* does not hold that plaintiffs were entitled to have their allegations regarding a policy of deliberate indifference determined by a jury, (2) even if *Berry* is interpreted to contain such a suggestion, the "law of the case" would not apply because the issue was not actually determined by the panel, and (3) even if the "law of the case" would otherwise apply, this case falls within the exception to that doctrine for instances in which substantially different evidence is adduced at the subsequent proceeding.

B. *The district court properly granted summary judgment.*

The district court's grant of summary judgment is reviewed de novo. *Buono v. Nortion*, 371 F.3d 543, 545 (9th Cir. 2004). Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." On review, we determine "viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 922 (9th Cir. 2001).

As we noted in *Berry*, plaintiffs sued Baca in his official capacity, pursuant to 42 U.S.C. § 1983. 379 F.3d at 767.

There is no respondeat superior liability under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). We further noted that Baca did not dispute that he acted on behalf of the official policy of the county. *Berry*, 379 F.3d at 767. We explained that:

> "a local governmental body may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights." *Oviatt v. Pearce,* 954 F.2d 1470, 1474 (9th Cir. 1992) (citing *City of Canton v. Harris,* 489 U.S. 378, 388, . . . (1989)). However, the policy of inaction must be more than mere negligence, *see Daniels v. Williams,* 474 U.S. 327, 333-36, . . . (1986); it must be a conscious or deliberate choice among various alternatives. *See Lee v. City of Los Angeles,* 250 F.3d 668, 681 (9th Cir.2001).

*Id.*

**[4]** The district court ruled correctly that the evidence submitted does not support a finding of deliberate indifference. Since the preliminary injunction issued in *Vanke* in 1998, the LASD has undergone an extensive revision of its process for releasing inmates. These policy changes, which include the In-Court Release, Greenband, and Early Release programs, have resulted in a tremendous reduction in the number of over-detentions, even according to the statistics submitted by plaintiffs. Although there continue to be over-detentions, they are a very small percentage of the total number of inmate releases. In a jail system as large as that of Los Angeles County, there are bound to be some errors due to employee negligence or honest mistakes. However, given the LASD's many affirmative efforts to remedy the problem, the evidence in the record will not support a finding of a policy of deliberate indifference.

**[5]** Plaintiffs' evidence does not raise any material issue of fact. Although Ms. Bickley-Jones' testimony was that she was

not told the reasons for recording over-detentions, she nonetheless indicated that she recorded over-detentions of "a day over" in the log book. Thus, while she may not have known why she was doing so, Ms. Bickley-Jones' testimony is that she faithfully entered information concerning over-detention. Capt. Jackson's testimony concerned alleged procedures in place prior to the time period in which plaintiffs were in custody, and plaintiffs offered no evidence that these procedures continued. To the contrary, the evidence of the new programs undertaken by the LASD indicates that they did not. Finally, plaintiffs' assertion that their own over-detentions were not recorded in the "supervisor report" packets does not raise any substantial question concerning the adequacy of defendant's records because plaintiffs Mortimer, Hart and Berry were all released within 24 hours of when their release orders were entered into the AIJS database, with the result that their over-detentions would not have been entered into the ODER database. Thus, the absence of notations about their over-detentions is not evidence that the LASD "stopped recording over-detentions of more than 24 hours but less than 48 hours." Furthermore, any such implication is overwhelmed by the records submitted by both sides that show that over-detentions of less than 48 hours were recorded and that the number of over-detentions were substantially reduced over the years in issue.

**[6]** In sum, as we noted in *Brass*, plaintiffs may well have a due process right to be released within a reasonable time after the basis for their detentions have ended. 328 F.3d at 1200. *See also Oviatt*, 954 F.2d at 1474 ("The Supreme Court has recognized that an individual has a liberty interest in being free from incarceration absent a criminal conviction."). However, for liability to attach to Baca in his official capacity, plaintiffs must show that their over-detentions were the result of a set of policies — or lack of policies — that amounted to a policy of deliberate indifference. *Berry*, 379 F.3d at 773. In *Oviatt*, we noted that the Supreme Court had indicated that a deliberate indifference exists "when the need

for more or different action 'is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need.' " 954 F.3d at 1477-78 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). Whatever the situation in 1998 when the district court issued a preliminary injunction in *Vanke*, on the evidentiary record here, including the curative steps taken by the LASD in the years covered by this lawsuit, no reasonable jury could find that the defendant was oblivious of, or indifferent to, over-detentions.

For the foregoing reasons, the district court's grant of summary judgment in favor of defendant is **AFFIRMED**.