**R.D. MORTIMER, et al., Plaintiffs,**

v.

**Leroy BACA, et al., Defendants.**

**No. 00 13002 DDP(SHX).**

United States District Court,
C.D. California.

March 15, 2007.

Joseph Yagman, Marion R. Yagman, Stephen Yagman, Yagman Yagman & Reichmann, Venice, CA, Kathryn Sue Bloomfield, Kathryn S. Bloomfield Law Offices, Mira, LA, Richard H. Millard, Richard H. Millard Law Offices, Los Angeles, CA, for Plaintiffs.

David D. Lawrence, Michael D. Allen, Paul B. Beach, Franscell Strickland Roberts & Lawrence, Glendale, CA, Andrew Baum, Bryan M. Sullivan, Louis R. Miller, Christensen Glaser Fink Jacobs Weil & Shapiro, Los Angeles, CA, for Defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION FOR CLASS DECERTIFICATION AND DENYING PLAINTIFFS' RULE 56(f) REQUEST [Defendants' Motion for Summary Judgment (filed October 30, 2006), Motion for Class Decertification (filed October 30, 2006), and Request for Rule 56(f) Continuance (filed January 8, 2007) ]

PREGERSON, District Judge.

This matter comes before the Court on defendants' motions for summary judgment and to decertify the class, as well as plaintiff's request for a Rule 56(f) continuance. Based on the papers submitted by both parties, the Court grants the motion for summary judgment and adopts the following order.

## I. BACKGROUND

Plaintiffs are representatives of a class of individuals who were allegedly overdetained by the Los Angeles County Sheriff's Department (LASD). Detainees in LASD custody must go through a series of administrative steps before their court-ordered releases can be effectuated. These steps include processing of paperwork and checking for holds from other agencies. This lawsuit involves the reasonableness of the length of time between the court's order and the actual release of the detainee from custody.

The named plaintiffs, Roger Mortimer, Anthony Hart, and Rodney Berry, originally brought suit in 2000 and 2001 alleging they were detained in excess of twenty-four hours following the court order of their release. As outlined in the facts and by the Ninth Circuit in *Berry v. Baca*, 379 F.3d 764, 766–67 (9th Cir.2004), the facts of the plaintiffs' case are as follows:

Mortimer's release was ordered when a jury returned a "not guilty" verdict at 11:45 a.m. on August 14, 2000. His paperwork was entered into the jail's Automated Justice Information System ("AJIS") at approximately midnight, and he was released from custody at 4:57 p.m. on August 15, 2000. Based on those times, Mortimer was detained twenty-nine hours after he was ordered released and seventeen hours after his paperwork was entered into AJIS.

Hart's release was ordered on August 17, 2000 at 9:30 a.m., but he was also ordered to appear in another matter that same day. The clerical staff at the Inmate Reception Center ("IRC"), which is the central processing facility for the jail, waited until the following day to confirm Hart had made the appearance and then entered his paperwork into AJIS at approximately 8:30 a.m. on August 18, 2000; he was released at 2:02 p.m. that day. His release was twenty-nine hours after the court's order and five hours after his information was entered into AJIS.

Berry's release was ordered when his case was dismissed at 11:30 a.m. on February 1, 2001. His file was entered into AJIS at 9:30 p.m. that day and he was released from custody on February 2 at 2:02 p.m. Thus, twenty-six hours elapsed from the time of the order and sixteen hours from the time his information was entered into AJIS until Berry was released.

The plaintiff class has been defined by the Court as "all LASD detainees who were not released within twelve hours of either (a) the expiration of the applicable sentence or (b) a court-ordered release, and who have no outstanding releases, warrants, or holds." Order Granting in Part Motion for Certification of a Damages Class, May 25, 2005 ("Certification Order") available at 2005 WL 1457743. Subsequently, the Court limited the applicable dates of the class from November 23, 2002 to May 25, 2005. Order Denying Plaintiffs' Motion for Class Notification, December 20, 2005 ("Notification Order") available at 2005 WL 3497817. This time limitation excludes all of the named plaintiffs from falling within the class. The only cause of action asserted by the plaintiffs not yet dismissed by the Court is that the alleged overdetentions violate the plaintiffs' rights under the Fourteenth Amendment to the U.S. Constitution in violation of 42 U.S.C. § 1983.

The Court has previously granted defendants summary judgment in this case on the grounds that the Ninth Circuit's holding in *Brass v. County of Los Angeles*, 328 F.3d 1192 (9th Cir.2003), precluded the policies in issue from violating the plaintiffs' constitutional rights. However, the Ninth Circuit reversed this ruling on the basis that the holding in *Brass* was distinguishable. *See Berry*, 379 F.3d at 768–70.

The Court of Appeals held that there was a factual dispute as to whether the application of county policies which resulted in detentions was unreasonable under the circumstances, and thus amounted to a policy of deliberate indifference to the arrestees' constitutional rights that precluded summary judgment. *See Id.*

The Sheriff asserts that he is entitled to summary judgment because there is no evidence to support the plaintiff's claim that the overdetentions were a result of an unconstitutional policy, practice, or custom. Plaintiffs counter that there is a triable issue of fact whether the defendants' policies constituted "deliberate indifference" with respect to overheld detainees.

The Sheriff has also filed a motion to decertify the class. He argues the class members' claims do not have the requisites of typicality or numerosity and that the representatives are improper because they do not fall within the outlined class itself. Plaintiffs respond that these issues were litigated previously and that the Sheriff's arguments are unsupported by evidence.

Also, the plaintiffs filed on January 8, 2007, a Rule 56(f) request with respect to both motions because plaintiffs' counsel has not yet deposed Deputy Craig Summers, a newly installed member of the Records Unit at the Inmate Reception Center. Plaintiffs' counsel Mr. Yagman has represented to the Court that he did not know of Deputy Summers until the defendants used his declarations in support of these motions. Defendants counter that plaintiffs' counsel had notice through a witness list of Deputy Summers' predecessor and did not depose her, and thus delay is not warranted. The Court addresses this matter first.

## II. RULE 56(f) REQUEST

■ Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Rule 56(f) empowers the court to continue or deny a motion for summary judgment if the opposing party needs time to discover facts essential to justify the opposition. *Hall v. Hawaii,* 791 F.2d 759, 761 (9th Cir.1986); Fed. R. Civ. P 56(f). Rule 56(f) reads:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f).

■ To prevail under Rule 56(f), a party opposing a motion for summary judgment must make clear what information is sought and how it would preclude summary judgment. *Hall,* 791 F.2d at 761. To obtain postponement or denial for further discovery, the opposing party's declarations must show: (1) facts establishing a likelihood that controverting evidence may exist as to a material fact; (2) the specific reasons why such evidence cannot be presented at the present time; *and* (3) the steps or procedures that the opposing party intends to utilize to obtain such evidence. *Terrell v. Brewer,* 935 F.2d 1015, 1018 (9th Cir.1991) (emphasis added).

■ The Court finds that the plaintiffs have failed to present facts establishing a likelihood that controverting evidence may exist as to a material fact, the specific reasons why such cannot be presented at the present time, and the steps or procedures that the plaintiffs intend to utilize to obtain such evidence. First, the Court notes that the discovery cut-off in this case occurred on July 13, 2006. Second, plaintiffs' counsel, Mrs. Yagman, has presented

the Court with over 800 pages in twenty-one exhibits as an evidentiary basis for opposing the summary judgment motion. The declaration of Deputy Summers simply verifies statistical information kept in the course of business through a computer system. Based on the reasons set forth above, the Court is not persuaded that justice requires further delaying ruling on these motions. Thus, the Court denies the Rule 56(f) request.

## III. EVIDENTIARY RECORD

The parties have submitted evidence for both motions in the form of exhibits and declarations describing how the jail functions, how records are kept, as well as providing some of the records themselves, and graphical interpretations of the raw data. Before addressing the substantive arguments of the motions themselves, some discussion of the evidentiary record is necessary.

### A. The Sheriff's Evidence

The Sheriff submitted declarations describing how records of potential overdetentions are kept. According to the declarations, the LASD maintains a series of sophisticated electronic databases to track the hundreds of detainees processed for release each day. The first system is the Automated Justice Information System ("AJIS"), which is the central database for information on all individuals in LASD custody. (Perry Decl. ¶ 3.) AJIS is the system LASD clerks must check to verify an individual has no additional holds once a release order has been given. The second database system is the Overdetention and Erroneous Release database ("ODER"), which contains records of all detainees held in excess of twenty-four hours from the time the release is entered into AJIS. (Barrantes Decl. ¶ 21.) Using the records contained in these systems, the Sheriff provided the numbers of individuals overdetained and fitting within the class defi-nition for calendar years 1997 to 2004 as well as for the defined class period (Exs. J–S.)

The raw data provided by the Sheriff is limited by those dismissal categories that define the class. The Court defined the class as "all LASD detainees who were not released within twelve hours of either (a) the expiration of the applicable sentence or (b) a court-ordered release, and who have no outstanding releases, warrants, or holds." (Certification Order). Those categories are "not guilty," "case dismissed," "own recognizance," and "expiration of sentence." (Barrantes Decl. ¶¶ 23–25.).

In the numbers presented by the Sheriff, overdetentions peaked in 1997 and declined every year in which records were produced. The numbers are presented by the declaration of Craig Summers, a deputy in the records division of the IRC. (Summers Decl. ¶ 2.) A summary of the data appears as Table 1.

**Table 1—Sheriff's Data on Overdetentions**

|  | NGTY | DISM | OR | EXP | Total |
|---|---|---|---|---|---|
| 1997 | 2 | 24 | 79 | 143 | 248 |
| 1998 | 4 | 20 | 71 | 78 | 173 |
| 1999 | 0 | 11 | 32 | 66 | 109 |
| 2000 | 0 | 7 | 32 | 66 | 105 |
| 2001 | 0 | 6 | 9 | 37 | 52 |
| 2002 | 0 | 4 | 5 | 25 | 34 |
| 2003 | 0 | 3 | 9 | 12 | 24 |
| 2004 | 0 | 2 | 1 | 6 | 9 |
| Class | 0 | 6 | 12 | 25 | 43 |

Source: Summers Decl. ¶¶ 7–15

In addition, the Sheriff submitted the total number of individuals released by the department for those time periods who meet class conditions of not guilty, dismissal, own recognizance, and expiration of sentence. For the years 1997, 1998, 1999,

2000, 2001, 2002, 2003, and 2004, the LASD released from custody 48,870; 79,053; 59,646; 55,794; 43,778; 24,295; 20,730; and 19,518, respectively, meeting the class conditions. (Exhibits K–R.) For the class period, the number of people released meeting those criteria is 50,706. (Exhibit S.). This means that the Sheriff's numbers reflect for the class period that forty-three people were potentially overdetained, that is they were not released within twenty-four hours of the time their information was entered into AJIS, out of 50,706 releases.

The Sheriff also described the steps taken by the department to reduce the number of overdetentions. The first was the courthouse release program, which began in 2001. The details of this program are found in the Seventeenth Semiannual Report by special Counsel Merrick J. Bobb, presented by both parties. (Ex. I, Ex. 9.) In that report, Special Counsel Bobb describes the In–Court Release and Greenband Program, implemented in May 2001, as follows:

> Each of the 49 courthouses in Los Angeles County [is] staffed by an In–Court Release Deputy from the LASD's Court Services Division. When a judge orders an inmate released, the bailiff notifies the In–Court Release Deputy, who then promptly checks AJIS for wants and holds. If the AJIS search shows a want or hold, the inmate is returned to IRC for reassignment to his or her regular housing unit. If, however, the AJIS search produces no "hits," the In–Court Release Deputy promptly notifies IRC that the inmate is apparently eligible for immediate release.... An IRC clerk, upon receiving notice from the In–Court Release Deputy that an inmate is apparently eligible for immediate release, pulls the inmate's record jacket and reviews all documentation to ensure that it does not reflect any outstanding wants or holds.... In addition, the clerk updates AJIS to reflect that the court has ordered the inmate released.
>
> If the inmate does not have any wants or holds and is not required to provide a DNA sample or to submit to a medical or mental evaluation, the IRC clerk contacts the In–Court Release Deputy and authorizes the release of the inmate at the courthouse.... In those cases where the inmate's release is conditioned upon providing a DNA sample or submitting to a medical or mental evaluation, the IRC clerk notifies the In–Court Release Deputy that the inmate is to be returned to IRC and processed on an expedited basis. Such inmates, who are identified with a green wristband, are known as "Greenband inmates." ... Upon arriving at the IRC, Greenband inmates are sent directly to a designated release area, where technicians and doctors take DNA samples and/or conduct medical or mental evaluations. Upon completion of this procedure, the inmates are ready to be reunited with their property and released....
>
> Because many of the Department's overdetentions had formerly occurred as a result of mistakes made in the hours or days following an in-court release order, the In–Court Release and Greenband Program has greatly contributed to the decrease in overdetentions in the past two years.

(Ex. 9 at 78–81.)

Another step is the Early Release Program, which releases inmates prior to the expiration of their sentences. As part of this program, the IRC maintains a list of individuals whose sentences will expire within three days ("The 72–hour List"). When an inmate's name appears on the list, he is processed for release and is often released at least twenty-four hours before his sentence expires. (Barrantes Decl. ¶ 25.) According to the Sheriff, these and

other procedures have dramatically reduced overdetentions from the peak in 1997 and continue to do so to the present day.

## B. The Plaintiffs' Evidence

The plaintiffs' evidence goes primarily to two points. First, that the Sheriff's numbers are inaccurate due to the wide discretion given to clerks and that the ODER clock does not start counting until a file is entered into AJIS. For this point, the plaintiffs present the declaration of Captain Charles M. Jackson (ret.), who was the captain of the IRC from 1998 to 2000. Capt. Jackson's declaration indicates that, while under his command, the IRC clerks were given twenty-four to forty-eight hours to complete a release. (Exhibit 18 ¶ 8.) Capt. Jackson's declaration is supplemented by the deposition testimony of Patricia Bickley–Jones, one of the head clerks at the IRC. Ms. Bickley–Jones testified in her deposition that the head clerks are responsible for making notations in their logbooks of potential overdetentions. According to the plaintiffs, the sum of this testimony indicates that the IRC clerks are given considerable discretion within the twenty-four to forty-eight hour time frame to record potential overdetentions, leading to inaccurate numbers. Plaintiffs also cite to the Sheriff's reply brief, which notes that the ODER clock begins when the information is entered into AJIS. (Reply at 7 n. 9.)

Second, the plaintiffs filed with the Court copies of excerpts from all overdetention packets produced under seal by the Sheriff for the years 2000 to 2005. (Exs.2–7.) Each full packet contains a "supervisor's report" listing the cause of the overdetention and the remedial steps taken as well as an internal memorandum from counsel with a settlement recommendation. Though the plaintiffs' evidence does not indicate the reasonableness of each overdetention, it does give the Court a rough idea of the *potential* for unreasonable overdetentions by the LASD.[1] Plaintiffs provided the Court with a complete packet for potential overdetentions less than forty-eight hours and only the settlement recommendation for all others. (Yagman Decl. ¶¶ 4–6.) Counting just the numbers of the packets, there are 240, 112, 92, 66, 51, and 71 for the years 2000, 2001, 2002, 2003, 2004, and 2005, respectively. (Yagman Decl. ¶¶ 10–15.) Of those packets, there are fourteen with potential overdetention times between twenty-four and forty-eight hours. (Yagman Dec. ¶¶ 10–15.) Furthermore, neither of the named plaintiffs has a packet in the Sheriff's files. (Yagman Decl. ¶¶ 7–9.) The thrust of this evidence, according to the plaintiffs, shows a triable issue of material fact as to whether the Sheriff has a policy of deliberate indifference to the constitutional rights of detainees in having a prompt release.

## III. MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" on that issue. Fed.R.Civ.P. 56(c). In determining a motion for summary judgment, all reasonable inferences from the evidence must be drawn in favor of the

---

1. Defendants object to the use of these packages on the grounds that they contain inadmissible settlement negotiation information in the form of an internal LASD memorandum.

*See* Fed.R.Evid. 408. However, the memoranda are not used to show liability, but rather a raw number of potentially unreasonably overdetained individuals.

nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party does not bear the burden of proof at trial, he is entitled to summary judgment if he can demonstrate that "there is an absence of evidence to support the nonmoving party's case." *Id.*

■ This suit is brought against the defendants in their official capacities under 42 U.S.C. § 1983 for violating the plaintiffs Fourth Amendment rights against unreasonable seizure. *See Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *cf. Mapp v. Ohio,* 367 U.S. 643, 655–56, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (applying the Fourth Amendment to the states through the Fourteenth Amendment). In order for the defendants to be liable, they must act as "lawmakers or . . . those whose edicts may fairly be said to represent official policy." *Monell,* 436 U.S. at 694, 98 S.Ct. 2018. Furthermore, plaintiffs must show "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691, 98 S.Ct. 2018; *see also Brass,* 328 F.3d at 1198. That municipal policy may be one of "deliberate inaction" that fails to protect constitutional rights. *Oviatt v. Pearce,* 954 F.2d 1470, 1474 (9th Cir.1992). To prove deliberate indifference, plaintiffs must show; 1) possession of a constitutional right that was deprived, 2) a municipal policy, 3) the policy amounts to

deliberate indifference to the plaintiff's constitutional right, and 4) that the policy was the cause of the violation. *Berry,* 379 F.3d at 767.

■ Previously in this litigation, the Ninth Circuit determined that the only factor at issue was factor three: whether the policy amounts to deliberate indifference. *Berry,* 379 F.3d at 773. Evidence of deliberate indifference as a custom must be shown by "practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir.1996). Thus, in order for the Court to grant summary judgment, the defendants must show no triable issue of material fact exists with respect to the reasonableness of the Sheriff's implementation of the policies that resulted in delay. *Cf. id.*

**B. Application**

■ Plaintiffs argue the Sheriff's numbers are inaccurate and that any ambiguity must be construed in plaintiffs' favor. While correct as a statement of law, the Court is not convinced the plaintiffs have indeed shown an ambiguity. The packets presented in Plaintiffs' Exhibits 2 through 7 are not filtered to fit the class specifications, which explains why the numbers are comparatively higher than the numbers presented by the Sheriff. In fact, plaintiffs' own exhibit shows that the total number of potential overdetentions listed in ODER and the number of packets presented are very close. In the Bobb report a table of inmate overdetentions by calendar year shows numbers that correlate almost exactly with plaintiffs' packet evidence. (Exhibit 9 at 73.)

Furthermore, the relatively low number of twenty-four to forty-eight hour overdetentions is logical when the In–Court Release and Greenband Program as well as

the early release program are added to the equation. Those individuals who are overdetained will be those whose sentences were miscalculated or have been subject to clerical error that leads to a longer overdetention than occurred with the named plaintiffs. Indeed, these programs have been in effect as part of an injunction issued in *Vanke v. Block* (CV 98–4111). (Barrantes Decl. ¶¶ 17, 23, 25.) This alone does not provide the Court with sufficient ambiguity to cast doubt on the Sheriff's numbers.

Nor does the testimony of Capt. Jackson and Ms. Bickley–Jones cast doubt on the Sheriff's numbers. Capt. Jackson left his post as head of the IRC in April 2000. (Ex. 18 ¶ 3.) His understanding of the procedures in place at IRC is before the injunction in *Vanke,* before the early release, In–Court Release and Greenband programs, and before the relevant class period. Moreover, Ms. Bickley–Jones's deposition testimony is heavily excerpted in the plaintiffs' exhibit. There is no indication from that alone that there was a system of deliberate indifference toward processing claims.

The Court finds that the Sheriff has shown the absence of a material issue of fact. The LASD processes tens of thousands of detainees every year. For the class period, nearly 51,000 individuals were released. Each of these individuals has court-related and administrative paperwork that must be processed in order to ensure that the release was proper. Not only has the Sheriff taken steps since *Vanke* to reduce the number of potential overdetentions, the number itself has dramatically decreased. As a matter of law, the Sheriff's implementation of polices since the *Vanke* injunction to effectuate 51,000 releases during the class period, of which 43 are potential overdetentions, is reasonable and cannot constitute a *Monell* deliberate indifference claim. Accordingly, summary judgment in the Sheriff's favor is appropriate.

## IV. MOTION FOR CLASS DECERTIFICATION

Because the Court grants summary judgment in favor of the Sheriff, it need not pass judgment on the now mooted motion for decertification. However, the same evidence supports the conclusion that decertification for a lack of numerosity alone would be appropriate.

## V. CONCLUSION

Based on the foregoing reasons, the Court grants the defendant's motion for summary judgment and denies the plaintiff's request for a Rule 56(f) continuance. The motion for decertification is denied as moot.

IT IS SO ORDERED.