**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

J. AVALOS, individually and as
representative of the class defined,
             *Plaintiff-Appellant,*

             v.

LEROY BACA; LARRY WALDIE;
SHAUN MATHERS,
             *Defendants-Appellees.*

No. 07-56511

D.C. No.
CV-05-07602-DDP

OPINION

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted
August 7, 2009—Pasadena, California

Filed February 24, 2010

Before: Kim McLane Wardlaw and Consuelo M. Callahan,
Circuit Judges, and Ralph R. Beistline,*
Chief District Judge.

Opinion by Judge Callahan

*The Honorable Ralph R. Beistline, United States District Judge for the
District of Alaska, sitting by designation.

## COUNSEL

Marion R. Yagman (argued) and Joseph Reichmann of Yagman & Yagman & Reichman of Venice Beach, California, for the plaintiff-appellant.

David D. Lawrence, Michael D. Allen, and Justin W. Clark (argued) of Franscell, Strickland, Roberts & Lawrence, O.C., of Glendale, California, for the defendants-appellees.

## OPINION

CALLAHAN, Circuit Judge:

J. Avalos was over-detained by the Los Angeles Sheriff's Department ("LASD"). He filed this action against officers of the LASD in their official and individual capacities.[1] He asserts claims pursuant to 42 U.S.C. § 1983 for alleged violations of his rights under the Fourth and Fourteenth Amendment based on his over-detention and for defendants' efforts to procure an involuntary waiver of his civil rights claim

---

[1]The first amended complaint included as defendants six Los Angeles County Supervisors. The district court dismissed these defendants, and Avalos does not challenge their dismissal on appeal. The remaining named defendants are Sheriff Leroy Baca, Undersheriff Larry Waldie, and Lieutenant Shaun Mathers.

based on his over-detention. Avalos also alleges claims of conspiracy and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(a)-(c) ("RICO"). The district court granted summary judgment in favor of defendants. We conclude that (1) plaintiff has failed to show an unconstitutional custom, policy or practice of over-detention, (2) there is no actionable claim under § 1983 for procuring a coercive or involuntary waiver of a civil rights claim, (3) the district court properly granted summary judgment for defendants on plaintiff's conspiracy claims, and (4) plaintiff has failed to present sufficient evidence of a RICO violation or any harm to his business or property from the alleged act of racketeering. Accordingly, the district court's grant of summary judgment in favor of defendants is affirmed.

I

On June 22, 2004, Avalos was arrested on an Orange County warrant for domestic abuse and transported to the LASD's jail. LASD had the responsibility to notify the Orange County Sheriff's Department of Avalos's arrest and detention. *See* Cal. Penal Code § 821. LASD failed to notify the Orange County Sheriff's Department that Avalos was available to be picked up. On September 4, 2004 — over two months later — LASD realized that Avalos had been over-detained and should be released.

On that day, Avalos was allowed to change into his personal clothes and was brought into an empty room. After he entered the room, Deputy Sheriff Wilson came in wearing street clothing and a sheriff's badge, and sat down across a desk from Avalos. According to Avalos, Wilson took out some papers. Avalos does not speak English, and claims that when he told Wilson he did not understand what was in the papers, Wilson only showed him where to sign. Avalos signed the papers, but asserts that he did not understand that the

papers were an offer to settle his claim for over-detention for $500.

According to the defendants, when Wilson realized that Avalos did not speak English, he enlisted Deputy Yvonne Zarate to translate. Deputy Zarate stated that she spoke to Avalos, learned that he earned $500 a week in his janitorial job, and discussed the waiver of his claim for over-detention in exchange for $500. Avalos was released later on September 4, 2004, and on September 9, 2004, two LASD officers, in an unmarked car and wearing street clothes, went to visit Avalos at his home. Avalos alleges that they telephoned his home, spoke to his 13-year-old daughter, and told her that Avalos should come outside. Avalos went outside alone. He states that neither of the officers, Wilson and Deputy Lam, spoke Spanish, but they told him to sign a "Release and Settlement Agreement" and gave him a check for $500. Avalos alleges that the officers did not explain the documents to him and he did not understand what he was signing. Avalos signed the documents, accepted the check, and subsequently cashed the check.

Avalos's First Amended Complaint ("FAC") was filed on April 3, 2006, at a time when several other related "over-detention" cases were pending before the district court judge. *See Mortimer v. Baca*, 478 F. Supp. 2d 1117 (C.D. Cal. 2007), *aff'd Mortimer v. Baca*, ___ F.3d ___ (9th Cir. Feb. 5, 2009) ("*Mortimer II*"). The FAC alleges four claims for relief. In his first claim, Avalos alleges that defendants violated his Fourth and Fourteenth Amendment rights by causing him to be over-detained and by causing him to involuntarily waive his civil rights claim against defendants. Avalos's second claim alleges that defendants engaged in a conspiracy to cause Avalos's over-detention and his involuntary waiver of his over-detention claim. In claims three and four, Avalos alleges that defendants conspired to and did engage in a pattern of racketeering activity in violation of RICO. Avalos also sought to represent a class of more than a hundred individuals shar-

ing the following characteristics: (1) they were over-detained by the LASD; (2) their over-detentions were recognized by LASD officials; and (3) they were "fraudulently, oppressively, extortionately, or with threats [ ] duped into compromising their monetary claims for sums far less than those claims are worth."[2]

In September 2006, Avalos moved for partial summary adjudication. On October 16, 2006, the district court granted plaintiff's motion and determined that he had been over-detained and that the defendants were potentially liable. In March 2007, the defendants moved for summary judgment. On August 24, 2007, the district court granted defendants' motion for summary judgment in its entirety. *Avalos v. Baca*, 517 F. Supp. 2d 1156 (C.D. Cal. 2007). Avalos filed a timely notice of appeal from that order.

## II

We review the district court's grant of summary judgment de novo and "must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Guegara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001). The moving party has "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

## III

Through this lens, we first consider plaintiff's challenges to the district court's grant of summary judgment on his over-

---

[2]Because Avalos did not move for class certification, the district court treated the FAC as an individual suit against the defendants.

detention claim and on his involuntary waiver claim. We then explain that the failure of plaintiff's substantive claims defeats his claims of conspiracy. Finally, we address plaintiff's challenges to the district court's grant of summary judgment on his RICO claims.

## A. The district court properly granted summary judgment for defendants on plaintiff's claims for over-detention.

There is no question that Avalos was over-detained. However, in order to recover from the defendants under 42 U.S.C. § 1983, Avalos must show either that they personally participated in his over-detention or that it was the result of a pattern or custom on their part. Although Avalos sued the defendants in both their official and individual capacities, and the district court granted defendants summary judgment in both capacities, we need only address their official capacity liability.[3]

[1] Pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), a public entity defendant sued in his official capacity cannot be held liable under a theory of respondeat superior; rather, a defendant must act as a law-

---

[3]The district court noted that individual liability under § 1983 arises only upon a showing of personal participation by the defendant, citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) and *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). The court noted that Avalos had presented no evidence that any of the defendants had any direct contact with him or had any actual knowledge of his incarceration. *Avalos*, 517 F. Supp. at 1168.

Appellant has abandoned any challenge to the grant of summary judgment against the defendants in their individual capacity by failing to raise the issue in his briefs. *See* Fed. R. App. P. 29(a)(9)(A); *Rattlesnake Coalition v. U.S. E.P.A.* 509 F.3d 1095, 1100 (9th Cir. 2007) (commenting that "[i]ssues raised in an opening brief but not supported by argument are considered abandoned" and reiterating that we "will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in the appellant's opening brief" (citation omitted)).

maker or one "whose edicts may fairly be said to represent official policy." *Id.* at 693. The district court explained plaintiff's resulting burden as follows:

> There are three ways to meet the policy, practice, or custom requirement for municipal liability under § 1983: (1) the plaintiff may prove that a public entity employee committed the alleged constitutional violation pursuant to a formal policy or a longstanding practice or custom, which constitutes the standard operating procedure of the local government entity; (2) the plaintiff may establish that the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official government policy; or (3) the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action . . . . An unconstitutional policy need not be formal or written to create municipal liability under § 1983; however, it must be so permanent and well settled as to constitute a custom or usage with the force of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68, . . . (1970). Furthermore, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policy maker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24, . . . (1985).

*Avalos*, 517 F. Supp. 2d at 1162.

Defendants, in moving for summary judgment, asserted that Avalos had failed to show that they had a policy, practice or custom of over-detaining inmates. They argued that the district court's grant of summary judgment in *Mortimer*, 478 F.

Supp. 2d. 1171, foreclosed plaintiff's over-detention claim because it held that LASD did not maintain a policy, practice or custom of over-detaining inmates. *Avalos*, 517 F. Supp. 2d at 1163.

The district court agreed that the existence of a policy or practice of over-detention was raised in *Mortimer*, and that Avalos "may only defeat summary judgment if he can distinguish this case from *Mortimer*."[4] *Id.* The district court determined that Avalos had failed to do so. First, it found that the evidence proffered by Avalos did not distinguish his case from *Mortimer*.[5] Second, the court noted that the number of incidents of over-detention had been substantially reduced over the years. *Id.* at 1164-65. Third, the court observed that any inference of an unconstitutional policy or practice was weakened further by the steps taken by LASD to reduce the number of over-detentions.[6] *Id.* at 1165-66. The district court

---

[4] The same attorneys represented Avalos and Mortimer both in the district court and on appeal before the Ninth Circuit.

[5] The district court explained:

> The LASD processes tens of thousands of detainees every year. *See Mortimer*, 478 F. Supp. 2d at 1179. Between November 2002 and May 2005, the LASD released nearly 51,000 persons, roughly 20,000 persons per year. *Id.* Neither party has submitted evidence in this case as to the total releases applicable to the pertinent period. However, if the Court applies the estimated number of annual over-detentions to the estimated number of annual releases, it appears that roughly 0.4% of persons released by LASD were over-detained, a percentage not readily distinguishable from the approximately 0.1% of over-detentions apparent in *Mortimer*. Furthermore, plaintiff has provided no analysis in their papers as to why minimal numerical differences between *Mortimer* and this case are material or amount to an unconstitutional custom, policy, or practice on the part of defendants. *Id.* . . . The numbers themselves do not bespeak unreasonableness.

*Avalos*, 517 F. Supp. 2d at 1164 (footnote omitted).

[6] In *Mortimer II*, ___ F.3d ___, (slip op. at 2091-92) we noted that these steps

concluded that "plaintiff has not met his burden to 'do more than simply show that there is some metaphysical doubt as to the material facts.' " *Id.* at 1166 (quoting *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

**[2]** We agree that Avalos has failed to present evidence from which a reasonable jury could find that defendants had a policy, practice or custom of over-detaining inmates. Avalos seeks to distinguish *Mortimer* on the ground that it concerned a different class of over-detained inmates. In addition, Avalos argues that the existence of a custom or policy does not depend on a proportionality analysis, but "on the traditional legal principles that define a custom, to wit, whether happenings are sufficiently persistent that one may say a custom exists." He argues that a deficient training program in the face of continuing constitutional violations may give rise to a claim of deliberate indifference. Whatever the merit of such arguments in the abstract, here, they are overwhelmed by the evidence of the steps taken by LASD to reduce the number of over-detentions and the effectiveness of those steps. Here, as

included the "In-Court Release" program, which began in 2001. This program allows inmates to be released at the courthouse immediately following a judge's release order without returning to the jail, provided that a prompt check of the database does not reveal any other warrants or holds. Another measure was the "Greenband" program in which inmates who could not be released at the courthouse due to a need to give a DNA sample or have a medical examination were given a green wristband and returned to the Inmate Reception Center ("IRC") only briefly to perform the procedure before release. A third measure was the Early Release Program, which begins the process for releasing inmates 72 hours before the expiration of their sentences, and often resulted in their early release.

In addition, the LASD created a database called the "Over-Detention and Erroneous Release" tracking system ("ODER") to keep track of recorded potential over-detentions. *Mortimer II* ___ F.3d at ___ (slip op. at 2092).

in *Mortimer II*, "given the LASD's many affirmative efforts to remedy the problem, the evidence in the record will not support a finding of a policy of deliberate indifference." ___ F.3d at ___ (slip op. at 2098). Accordingly, the district court properly granted summary judgment against Avalos on his claim of over-detention.

### B.   Avalos cannot state a cognizable claim for his involuntary waiver.

Despite the reduced number of over-detentions by the LASD, Avalos alleges that "rather than implementing a procedure designed to prevent or detect lengthy over-detentions, the defendants instead have utilized a coercive in-custody settlement program that concentrates on forced, coercive in-custody settlements of over-detention claims for paltry sums of money." He cites *Jones v. Tuber*, 648 F.2d 1201 (9th Cir. 1981), in support of his contention, noting that the methods employed there are similar to the LASD's practices and that our determination in that case that the waiver signed by the detainee was not voluntary is applicable to this case.

Avalos alleges that he did not understand what he was asked to sign and that the procedure followed in his case was a deliberate policy designed to result in settlement that was "neither fair nor reasonable, as required by written Jail policy." He argues that this "long-standing practice of coercing inmates into settling their Section 1983 claims for token amounts under coercive and fraudulent circumstances constitutes a 'custom or usage with the force of law' " as defined in *Adickes*, 398 U.S. at 168. Avalos concludes that the "coercive in-custody settlement process also is evidence of deliberate indifference because instead of solving the continuing problem of over-detaining inmates, it is cheaper to settle their over-detention claims for a pittance."

Plaintiff's claim for his involuntary waiver of his right to damages due to his over-detention is not persuasive as a mat-

ter of law or of fact. The only authority cited by Avalos for his proposition is *Jones*, 648 F.2d 1201, but our opinion in *Jones* does not support his assertion of a constitutional violation.

**[3]** Jones filed a civil rights action against Multnomah County officials seeking damages for a beating administered while he was in the county jail awaiting sentencing. *Id*. at 1202. The threshold issue was the validity of a release Jones had signed in exchange for $500.[7] *Id*. The district court granted summary judgment and we reversed. We explained that "[a] release of claims under section 1983 is valid only if it results from a decision that is voluntary, deliberate, and informed." *Id*. at 1203. Citing the approach to maritime releases, we held that a party seeking to rely on a release in a § 1983 action has the burden of proving its validity. *Id*. at 1203-04. We concluded that "objective indications of coercive pressures and a lack of understanding" precluded a grant of summary judgment, and noted that on remand the district court must consider "the presence of a noncoercive atmosphere for the execution of the release, or how significant is the absence of such an atmosphere." *Id*. at 1204.

---

[7]Our opinion set forth the undisputed facts as follows:

> On the night of July 3, 1976, Jones was taken from his cell, stripped, gagged, bound, chained to a wall, hosed with cold water and beaten with a night stick. The incident lasted 3 to 5 hours. He was then replaced in a special segregation facility and held there for nineteen days until, on July 22, he was escorted without notice to an interview room to meet with a deputy county counsel and a claims adjuster. The subject of the meeting was whether or not Jones would accept $500 for a release in favor of the county and the individual defendants for all claims arising from the beating and mistreatment on the night of July 3.

> At the conclusion of the meeting Jones accepted the release and executed the documents presented to him.

*Jones*, 648 F.2d at 1202.

**[4]** We agree with Avalos that *Jones* establishes the criteria for evaluating the validity of his waiver of his over-detention claim, but more importantly, we agree with the district court that the case "does not stand for the proposition . . . that there is an actionable claim under 42 U.S.C. § 1983 for causing an involuntary waiver of a civil rights claim." *Avalos*, 517 F. Supp. 2d at 1168-69. The district court explained:

> The logic behind this conclusion is simple. If plaintiff were to bring an individual civil rights claim for his over-detention against defendants, defendants could raise the affirmative defense that the claim was barred by the waiver. Plaintiff would then argue that the waiver was involuntary. As an affirmative defense, it is defendants' burden to prove that plaintiff's waiver met *Jones*' standard of "voluntary, deliberate and informed." *See Jones*, 648 F.2d at 1203. If defendants did not meet this burden, in addition to damages for his over-detention, plaintiff would be entitled to attorneys' fees. Plaintiff could recover whatever additional attorneys' [fees] he incurred in arguing the waiver issue. But the underlying constitutional right at issue is not to be free of a coercive waiver, it is to be free when one is entitled to be released.

*Id.* at 1169.

**[5]** Because a coerced waiver does not extinguish a detainee's claim for over-detention or false imprisonment, there is no "freestanding constitutional right to be free of a coercive waiver." *Id.* Whether a waiver was "coerced" is a factual issue that is properly considered — as it was in *Jones* — if and when a defendant raises it as an affirmative defense to a detainee's claim for damages. *See Salmeron v. United States*, 724 F.2d 1357, 1362 (9th Cir. 1983) (holding that "[w]hether such a release was voluntarily executed is a question of fact to be determined from all the circumstances"). Accordingly,

although a person may well have a due process right not to be held to a coerced settlement or waiver, this does not mean that a government entity in seeking a settlement of waiver violates a person's constitutional rights if its efforts are heavy-handed.

**[6]** Indeed, the proceedings in this case reinforce our determination that Avalos has not presented a constitutional right to be free from a coerced waiver. To the extent that the alleged improper purpose of the waiver was to prevent Avalos from seeking a full recovery on his claim for over-detention, it failed. Avalos did file a lawsuit seeking damages for his over-detention and the district court ruled on its merits, despite defendants' contention that his waiver was not coerced. Thus, unlike the situations presented in cases such as *Phillip v. Hust*, 588 F.3d 652 (9th Cir. 2009) (alleging that a librarian's failure to allow an inmate to use a comb-binding machine caused his petition for certiorari to be late), here the defendants' actions did not interfere with plaintiff's access to the courts.[8] Furthermore, as the court considered his claims on the merits, Avalos would be hard pressed to show any compensable damages from defendants' allegedly improper efforts to procure a waiver. We conclude that the district court properly granted summary judgment in favor of defendants on plaintiff's coerced settlement claims.

---

[8]Our determination is consistent with the Supreme Court's position in *Christopher v. Harbury*, 536 U.S. 403 (2002), commenting that a claim of access to the courts is ancillary to the underlying claim. The Court explained:

> While the circumstances thus vary, the ultimate justification for recognizing each kind of claim is the same. Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective indication for a separate and distinct right to seek judicial relief for some wrong. However unsettled the basis of the constitutional right of access to courts, our cases rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court.

*Id*. at 414-15.

**[7]** Finally, even were we to determine that Avalos could assert a constitutional claim to be free from a coerced waiver, in light of the dearth of precedent so holding, the defendants would be entitled to qualified immunity under the second prong of the test set forth in *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (holding that "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate"); *see also Pearson v. Callahan*, 129 S. Ct. 808, 816 (2009) (noting that if the plaintiff establishes a violation of a constitutional right, "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct").

## C. Plaintiff's claim of conspiracies to over-detain and to coerce settlement was properly dismissed because his underlying claims for over-detention and coerced settlement were properly dismissed.

The district court cited two grounds to support its grant of summary judgment for defendants on Avalos's conspiracy claim. First, it noted that because it had "already determined that plaintiff's involuntary waiver claim fails as a matter of law," defendants' actions in procuring his waiver would not support a conspiracy claim. *Avalos*, 517 F. Supp. 2d at 1169. Addressing the allegations of a conspiracy to over-detain, the district court noted that the elements to establish a cause of action under § 1983 were: "(1) the existence of an express or implied agreement among the defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement." *Id*. at 1169-70 (quoting *Ting v. United States*, 927 F.2d 1505, 1512 (9th Cir. 1991)). Applying this standard, the district court's second ground for granting summary judgment was that Avalos "has presented no evidence to support the existence of an agreement or meeting of the minds between defendants, whether the agreement be specific or inferred from conduct, nor does

he provide any evidence that the deprivation of his right was the *result* of such an agreement." *Id.* at 1170.

**[8]** We affirm the district court's grant of summary judgment for defendants on plaintiff's conspiracy claim. Although Avalos maintains that defendants had a deliberately indifferent custom of over-detaining inmates, he does not really challenge the district court's findings that there was no evidence of an agreement or that his over-detention was the result of such an agreement. Moreover, the district court properly concluded that its rejection of plaintiff's involuntary waiver claim as a matter of law eviscerated his conspiracy claim. *See Cassettari v. Nevada County, Cal.*, 824 F.2d 735, 739 (9th Cir. 1987) (noting that "[t]he insufficiency of these allegations to support a section 1983 violation precludes a conspiracy claim predicated upon the same allegations"); *see also Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir. 1980) (noting that "[i]n order to state an adequate claim for relief under section 1983, plaintiff must allege and prove both a conspiracy and an actual deprivation of rights; mere proof of a conspiracy is insufficient to establish a section 1983 claim" (internal quotation marks and citation omitted)).

**D.  The district court properly granted defendants summary judgment on plaintiff's claims under RICO.**

Avalos alleges that he "has a cognizable property interest in his Section 1983 cause of action for violation of his Fourteenth Amendment constitutional rights based on the 73-day over-detention and therefore has standing to assert his RICO claim." He further asserts that the record is replete with evidence that "through fraud and duress, the defendants had a pattern of fraudulently extracting in-custody settlements for negligible amounts, and of defeating, or attempting to defeat, potential Section 1983 lawsuits."

The district court set forth the criteria for a RICO claim as follows:

[RICO] prohibits, among other activities, the conducting of an enterprise's affairs through racketeering activity. 18 U.S.C. § 1962(c). A prima facie RICO case requires: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir. 2004). Furthermore, there must be an injury to a specific business or property interest. *Diaz v. Gates*, 420 F.3d 897, 898 (9th Cir. 2005). The plaintiff must also demonstrate that defendants engaged in at least *two* acts of racketeering activity as defined in 18 U.S.C. § 1961. *Bowen v. Oistead*, 125 F.3d 800, 806 (9th Cir. 1997). Moreover, RICO requires as a threshold for standing an injury to "business or property." 18 U.S.C. § 1964(c). "Without a harm to a specific business or property interest — a categorical inquiry typically determined by reference to state law — there is no injury to business or property within the meaning of RICO." *Diaz*, 420 F.3d at 900.

Section 1962(d) prohibits anyone from conspiring to violate the provisions of 18 U.S.C. § 1962(c). Under § 1962(d), plaintiff must show that defendants objectively manifested their agreement to participate in a racketeering enterprise through the commission of two or more predicate crimes. *Baumer v. Pachl*, 8 F.3d 1341, 1346-47 (9th Cir. 1993).

*Avalos*, 517 F. Supp. 2d at 1170.

The district court proceeded to grant defendants summary judgment on Avalos's RICO claims because: (1) although "plaintiff alleges he has suffered lost wages and economic opportunities due to his over-detention, plaintiff has presented no evidence to support this assertion"; (2) "plaintiff has presented no evidence of a 'pattern' of 'racketeering activity' by any of the defendant officials sued in their official or individual capacities"; and (3) as to plaintiff's RICO conspiracy

claim, "plaintiff has not presented any evidence of a 'conspiracy' or 'agreement' among defendants to over-detain him." *Id.* at 1171-72. The district court concluded, citing *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986), that Avalos had not met his burden at the summary judgment stage of presenting evidence to show a genuine issue for trial. *Id.*

On appeal, Avalos argues that he has standing to assert a RICO claim because we look to state law to determine what is a property right and California law provides that a cause of action to recover money in damages is a form of personal property. *See Diaz*, 420 F.3d at 899 (stating that "[w]e believe the best-reasoned approach is that of *Doe v. Roe*, 958 F.2d 763 (7th Cir. 1992), under which we typically look to state law to determine 'whether a particular interest amounts to property,' *id.* at 768."); *see also Parker v. Walker*, 5 Cal. App. 4th 1173, 1182-83 (citing Cal. Civil Code §§ 663 and 953, and holding that a "cause of action to recover money in damages, as well as money recovered in damages, is a chose in action and therefore a form of personal property").[9]

**[9]** The district court's grant of summary judgment for the defendants on plaintiff's RICO claims was proper for at least two reasons. First, a prima facie RICO case requires a showing of conduct of an enterprise through a pattern of racketeering activity. *Miller*, 358 F.3d at 620. Here, the determination that defendants did not engage in a custom, policy or practice of over-detention precludes Avalos from alleging any predicate act concerning over-detention that might support a finding of a pattern of racketeering activity. This conclusion is reinforced by plaintiff's failure to allege that the defendants

---

[9]Avalos also claims that the district court erred in granting summary judgment against him on his RICO claims because (1) the district court misconstrued his burden at the summary judgment stage, (2) qualified immunity is not available to defendants on RICO claims, and (3) his FAC adequately states RICO claims. These contentions are not discussed as they do not affect our reasons for affirming the district court.

had any personal involvement in their over-detentions. Similarly, as there is no constitutional right against defendants seeking settlements or waivers, defendants in procuring Avalos's waiver did not commit any predicate act that might support a finding of a pattern of racketeering activity.

**[10]** Second, in order to state a RICO claim, a plaintiff must show harm to a specific business or property interest. *Diaz*, 420 F.3d at 900 (holding that "[w]ithout a harm to a specific business or property interest . . . there is no injury to business or property within the meaning of RICO"). Avalos has failed to do so. He has not proffered any evidence of specific injury to a business, and it appears that he cannot do so because he admits that he is not a United States citizen and does not have a work visa. Avalos may be correct in contending that his right to judicial action could be considered "property" under California law, but he cannot show any harm because the allegedly coerced waiver, in fact, did not deny him access to the courts. In other words, even if the right to a judicial proceeding is a property right under California law, Avalos suffered no "harm" to that right because he was able to file his claim for over-detention (and coerced settlement) in the district court.

IV

There appears to be no doubt that Avalos was improperly over-detained by the LASD. In this action, however, he seeks damages from the Sheriff and two officers of the LASD based on 42 U.S.C. § 1983 and RICO. The district court properly concluded that Avalos failed to make a prima facie showing for relief under these statutes. He failed to show that the officers had any personal involvement in his over-detention or that his over-detention was the result of any custom, policy or practice of the LASD. Also, Avalos failed to show that he had any constitutional right against the LASD seeking a settlement of his claim for over-detention. In addition, he has not demonstrated any cognizable injury from the allegedly

coerced waiver of his right to seek damages due to his over-detention. Finally, on plaintiff's RICO claims, the district court properly determined that Avalos had failed to allege any improper acts by the named defendants that could be construed as constituting a pattern of racketeering activity and he failed to show any harm to a business or property interest. For these reasons, the district court's grant of summary judgment in favor of defendants and against the plaintiff is **AFFIRMED**.