**Phillip REED, Plaintiff,**

v.

**Lee BACA, et al., Defendants.**

**Case No. 2:10–cv–05766–JHN–JCx.**

United States District Court, C.D. California.

July 22, 2011.

Donald Webster Cook, Robert Frederick Mann, Law Offices of Mann and Cook, Los Angeles, CA, for Plaintiff.

Scott E. Caron, Lawrence Beach Allen & Choi PC, Glendale, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

JACQUELINE H. NGUYEN, District Judge.

This matter is before the Court on Defendants Sheriff Lee Baca ("Baca"), County of Los Angeles ("County"), and Los Angeles County Sheriff's Department's ("LASD") Motion for Summary Judgment. ("Motion"; docket no. 18.)[1] On June 6, 2011, the Court held a hearing on the matter after which the motion was taken under submission. (Docket no. 47.) The Court has considered the briefing in the matter as well as oral argument presented at the hearing. For the reasons herein, the Court GRANTS the Motion.

### I. BACKGROUND

Plaintiff alleges that Defendants improperly arrested him on a warrant issued for his brother and improperly detained him following his arrest.

### A. Plaintiff's Arrest

While on patrol around 9 p.m. on the evening of May 3, 2009, Deputy Sergio Jimenez ("Jimenez") and Alberto Hernandez (collectively, "the Deputies") spotted a vehicle driven by Plaintiff, with license plate number 5XGY790. (Declaration of Sergio Jimenez ("Jimenez Decl.") ¶ 3.) The Deputies ran a warrant check based on the

---

1. In this Order, the Court refers to Baca, County, and LASD collectively as "Defendants."

license plate number, and found a warrant issued for Phillip John Reed. (*Id.;* Defs.' Exhibits, Ex. E at 36 [Unit History Report for May 3, 2009].) The Deputies pulled Plaintiff's car over to determine if the warrant's subject was in the vehicle. (Jimenez Decl. ¶ 3.)

The misdemeanor warrant (no. ING9IG0112001), issued on April 28, 2009, identified "Phillip John Reed" as a 6'1" tall, 170–pound black male with brown hair and brown eyes, with the date of birth */*/1981 and a Los Angeles residence. (Defs.' Exhibits, Ex. C at 25 [Warrant Abstract].) The warrant abstract contained a Social Security number ending in *XXXX and CII number A11401270. (*Id.*)[2]

After pulling the car over, the Deputies requested Plaintiff's driver license and registration. (Defs.' Exhibits, Ex. F [Deposition of Phillip John Reed ("Reed Depo.")] at 47:11–16.) Upon seeing that the information on his license as well as his physical appearance[3] matched that listed on the warrant, the Deputies informed Plaintiff that there was a $30,000 warrant out for his arrest. (*Id.* at 49:9–20; Jimenez Decl. ¶ 4.) According to Plaintiff, after the deputies informed him of the warrant, he gave them his "judicial clearance papers," which indicated that a war-

rant issued for a "Phillip Reed" with the warrant number 7CP02616 did not apply to him. (Defs.' Exhibits, Ex. F [Reed Depo.] at 49:17–25; Declaration of Donald Cook ("Cook Decl."), Ex. E [Judicial Clearance form dated July 5, 2007].) Plaintiff testified that a deputy took the judicial clearance form to the patrol car and then returned, informing Plaintiff that "this clearance [does] not match what was on the computer." (Defs.' Exhibits, Ex. F [Reed Depo.] at 51:19–53:24.)[4] The Deputies then arrested Plaintiff and transported him to the Century Regional Detention Center for booking. (*Id.* at 61:1–8.; *see also* Jimenez Decl. ¶ 7.)

**B. Plaintiff's Booking**

According to Defendants, upon delivering Plaintiff to the Detention Center, Jimenez reviewed Plaintiff's Warrant Information Sheet ("WIS"), and confirmed that Plaintiff's description and identifiers matched that on the warrant. (*Id.* ¶ 8; Cook Decl., Ex. C [Jimenez Depo.] at 28:16–25.) Plaintiff was placed in a holding cell.[5] After he was released from the holding cell and before he was taken to the main area "where they had the beds," Plaintiff was fingerprinted using LiveScan technology and photographed. (Defs.' Exhibits, Ex. F [Reed Depo.] at 70: 10–23.)

**2.** The Unit History Report lists a name, date of birth, height, weight, hair color, eye color, and states "subject may be same as CII/ A11401270 FBI/980409DB3." (Defs.' Exhibits, Ex. E [Unit History Report for May 3, 2009] at 36.)

**3.** Plaintiff admitted in his deposition that he is indeed 6'1" tall with brown hair and brown eyes, and he weighed approximately 170 pounds in May of 2009. (Defs' Exhibits, Ex. F. [Reed Depo.] at 21:1–22:19.) Plaintiff also admitted that the driver license number and address listed on the warrant matched his. (*Id.*)

**4.** The judicial clearance form Plaintiff purports to have given to the Deputies was issued

in July 2007 and related to a warrant with the number 7CP02616. (Cook Decl., Ex. E [Judicial Clearance form dated July 5, 2007].) In this case, the Deputies arrested Plaintiff pursuant to warrant number ING9IG0112001. (Defs.' Exhibits, Ex. C at 25 [Warrant Abstract].) Jimenez claims that he does "not recall" being shown a judicial clearance form by Plaintiff. (Jimenez Decl. ¶ 5.)

**5.** The Los Angeles County Booking and Property Record states that Plaintiff was arrested at 9:20 p.m. and booked at 10:49 p.m. (Defs.' Exhibits, Ex. C. [Plaintiff's Booking Jacket Information] at 24.)

According to Plaintiff, he informed the officer who fingerprinted him that "somebody has been using my identity" and he had "judicial clearance," but the officer "didn't follow up on whatever [he] was saying." (Cook Decl., Ex. B. [Reed Depo.] at 59:10–13; 71:15–20.) By the time he made complaints to the fingerprinting officer, however, Plaintiff no longer had access to the judicial clearance form because his wallet had been taken from him. (Id. at 72:16–25.) The Deputies did not conduct Plaintiff's fingerprinting, nor did they see the fingerprint LiveScan results or Plaintiff's criminal history during Plaintiff's booking. (Jimenez Decl. ¶ 9.)

At 11:10 p.m, a Live Scan report was returned, indicating that Plaintiff's fingerprints did not correlate with a criminal record or match a CII number in the Los Angeles County database.[6] (Cook Decl., Ex. L [Key Depo.] at 24:2–23; Defs.' Exhibits, Ex. C at 27 [Los Angeles County Regional Identification System Notification].) Because Plaintiff had no CII number in the database, he was assigned CII number A30157089. (Id., Ex. C at 26 [Live Scan Transaction Agency Notification].)

The next morning, Plaintiff was transported to Twin Towers Correctional Facility in Downtown Los Angeles. (Defs.' Exhibits, Ex. B [Reed Depo.] at 82:1–11.) Plaintiff testified that he did not talk to anyone or ask questions when transported, nor did he attempt to make any phone calls. (Id. at 83–84.) After about two to four hours, Plaintiff was transported to the Inglewood Courthouse. (Id. at 85:17–24.) At the Courthouse, Plaintiff met with a paralegal from the public defender's office, who was able to determine (by typing the CII number associated with the warrant into the computer and pulling up the warrant subject's file) that Plaintiff was not the warrant's subject. (Id. at 85:25–86:18.) At the request of the District Attorney, the case against Plaintiff was dismissed in an afternoon hearing on May 4, 2009, on the basis that Plaintiff's height and photograph did not match that of the subject of the warrant. (Id. at 81:22–87:4; Defs.' Exhibits, Ex. H [Reporter's Transcript of Proceedings].) Plaintiff was released from custody around 7:00 p.m. on May 4, 2009. (Defs.' Exhibits, Ex. D [Total Inmate Information for Plaintiff] at 3.)

Plaintiff filed the instant action against Defendants on August 3, 2010, alleging the following causes of action: (1) violations of his Fourth Amendment rights under 42 U.S.C. Section 1983 (against all Defendants); (2) violation of his Fourteenth Amendment rights under 42 U.S.C. Section 1983 (against all Defendants); (3) wrongful arrest and detention under California Constitution, Article I, § 13 (against Los Angeles County and LASD); (4) violation of Cal. Civil Code Section 52.1 ("Bane Act") (against Los Angeles County and LASD); and (5) false imprisonment (against Los Angeles County and LASD). (Docket no. 1.)

On April 25, 2011, Defendants filed this motion for summary judgment. (Docket no. 18.) Along with the Motion, Defen-

---

**6.** The California Department of Justice ("CDOJ") designates a California Identification Index ("CII") number which is matched to a person's fingerprints. (Declaration of Donald Cook ("Cook Decl."), Ex. L [Depo. of Gregory Key ("Key Depo.")] at 8:13–9:2). When an arrestee is booked in a California jail, the arrestee's fingerprints are recorded and transmitted to the CDOJ. (Declaration of Gregory Key ("Key Decl.") ¶ 11.) If the individual's fingerprints are already on file, his various identification numbers and criminal history will be transmitted back to the arresting agency. (Key Decl. ¶ 11.) If the arrestee's fingerprints are not on file, the CDOJ will assign a new CII number and notify the arresting agency that it has done so. (Id.)

dants also filed a Separate Statement of Uncontroverted Facts. (Docket no. 19.) On May 16, 2011, Plaintiff filed an Opposition and a Separate Statement of Genuine Issues of Material Facts. (Docket nos. 29, 30.) Defendants filed a Reply and a Response to Plaintiff's Opposing Separate Statement of Uncontroverted Facts and Conclusions of Law. (Docket nos. 34, 36.) Both parties also filed Objections to Evidence (docket nos. 37, 38), which the Court will address in the Order as needed. For the reasons herein, the Court GRANTS the Motion.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 allows a party against whom relief is sought to move for summary judgment on all or part of a claim or defense. Fed.R.Civ.P. 56(a).[7] Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* The moving party bears the burden of showing that the motion is properly made and supported. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting former Fed.R.Civ.P. 56(c)); *see also Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1102 (9th Cir.2000) ("In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its burden of persuasion at trial."). "The court need consider only the cited materials, but it may consider other materials in the record." Fed.R.Civ.P. 56(c)(3). If the moving party meets its

initial burden, the nonmoving party must then present specific facts that demonstrate the existence of a genuine factual issue that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where the opposing party is able to identify specific, relevant facts evidencing a genuine issue of material fact, the court must draw all inferences in favor of the opposing party and accordingly deny summary judgment. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 631 (9th Cir.1987). However, the lack of any genuine issue of material fact will necessitate a grant of summary judgment.

## III. DISCUSSION

Plaintiff alleges § 1983 claims based on Fourth and Fourteenth Amendment violations against Baca (in both his official and individual capacity), the County, and LASD. The Court will first address the claims against the municipalities and Baca in his official capacity. The analysis of Plaintiff's claims against Baca in his individual capacity will follow.

█ As an initial matter, Plaintiff argues that his arrest as well as his pre-arraignment incarceration should be analyzed under the Fourth Amendment probable cause standard. (Opp'n at 6.) The Court disagrees. As Judge Gutierrez recently explained in *Rivera v. Cnty. of L.A.,* 2011 WL 2650006, at *8, 2011 U.S. Dist. LEXIS 74525, at *24 (C.D.Cal. July 5, 2011), "courts in this Circuit have consistently analyzed claims arising from an incarceration based on mistaken identity under the Due Process Clause to the Fourteenth Amendment." *See, e.g., Bak-*

---

7. Rule 56 was revised effective December 1, 2010. However, the standard for granting summary judgment remains the same as before the revision. *Seacor Holdings, Inc. v.* *Commonwealth Ins. Co.,* 635 F.3d 675, 680 n. 8 (5th Cir.2011); *Doe v. City of San Mateo,* No. C 07–05596 SI, 2011 WL 500203, at *2 n. 1 (N.D.Cal. Feb. 9, 2011).

*er v. McCollan,* 443 U.S. 137, 141, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Fairley v. Luman,* 281 F.3d 913, 915–18 (9th Cir.2002). Accordingly, though Plaintiff's arrest is analyzed under the Fourth Amendment, the Court will analyze his pre-arraignment incarceration under the Fourteenth Amendment in Section A(2), *infra.*

**A. Section 1983 Claims Against Baca (in his official capacity), the County, and LASD**

 Municipalities may be held liable under Section 1983 only where the plaintiff can show (1) that he was "deprived of [his] constitutional rights by defendants and their employees acting under color of state law; (2) that the defendants have customs or policies which 'amount to deliberate indifference to . . . constitutional rights; and (3) that these policies are the moving force behind the constitutional violations.'" *Lee v. City of Los Angeles,* 250 F.3d 668, 681–2 (9th Cir.2001) (quoting *Oviatt v. Pearce,* 954 F.2d 1470, 1473–77 (9th Cir.1992)). The Ninth Circuit explains that a custom or informal policy may be shown by evidence of a "widespread practice that . . . is so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Gillette v. Delmore,* 979 F.2d 1342, 1348–49 (9th Cir.1992) (internal quotations omitted). However, *Monell* liability will only attach where a municipality's policies or customs evince a "deliberate indifference" to the constitutional right and are a "moving force behind the constitutional violation." *Edgerly v. City and Cnty. of San Francisco,* 599 F.3d 946, 960 (9th Cir.2010) (quoting *Levine v. City of Alameda,* 525 F.3d 903, 907 (9th Cir.2008)).

**1. Fourth Amendment § 1983 Claims**

 The Fourth Amendment protects the "right of the people . . . against unrea-sonable . . . seizures." U.S. Const. amend. IV. Generally, an arrest pursuant to a valid warrant is consistent with the Fourth Amendment. *Baker,* 443 U.S. at 143, 99 S.Ct. 2689. However, when officers arrest the wrong person on a constitutionally valid warrant, the question of whether the plaintiff's Fourth Amendment rights were violated "turns on whether [the arresting officers] had reasonable cause to believe that Plaintiff[ ] was the person named in the warrant." *Gant v. Cnty. of Los Angeles,* 765 F.Supp.2d 1238, 1248 (C.D.Cal. 2011) (citing *Blackwell v. Barton,* 34 F.3d 298, 303 (5th Cir.1994)); *see also, Hill v. California,* 401 U.S. 797, 802, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971) (explaining "when the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest").

 Here, Plaintiff presents no evidence to rebut Defendants' contention that the Deputies reasonably believed they were arresting the right person on the warrant. First, Plaintiff was a virtual match to the descriptors in the warrant: same name, birth date, race, sex, height, weight, license plate number, and driver license number. In fact, Plaintiff admitted that in May 2009, his height, weight, and hair and eye color exactly matched the physical description listed on the warrant. (Defs.' Exhibits, Ex. F. [Reed Depo.] at 21:1–22:19.) Plaintiff also admitted that the name, driver license number, date of birth, and address listed on the warrant abstract matched his. (*Id.*) Second, even though Plaintiff testified that he showed the Deputies a "judicial clearance" form, the form was issued in July 2007 and related to warrant number 7CP02616. (Cook Decl., Ex. E [Judicial Clearance form dated July 5, 2007]; Reply at 5.) In this case, the Deputies arrested Plaintiff

pursuant to warrant number ING9IG0112001, issued on April 28, 2009. (Defs.' Exhibits, Ex. C at 25 [Warrant Abstract].) Therefore, even if the Deputies were presented with Plaintiff's Judicial Clearance form issued in 2007, it would have been reasonable for them to believe that Plaintiff was the May 2009 warrant's subject.

Plaintiff argues that the Deputies should have realized that he was not the warrant's subject because the Warrant Information Sheet indicated that the warrant's subject had a criminal record, whereas Plaintiff did not. (Opp'n at 4.) Plaintiff contends that upon reviewing the Warrant Information Sheet, the Deputies would have known that the warrant's subject had a criminal record because two finger-print matched identifiers—CII # A11401270 and FBI # 980409DB3—were listed. (Opp'n at 4.) Defendants counter that the arresting Deputies were not aware of the difference in CII numbers leading up to the decision to arrest Plaintiff. (Reply at 7.) In fact, Jimenez testified that he did not receive training about the creation and use of CII numbers.[8] (Cook Decl., Ex. C [Jimenez Depo.] at 18:13–23.) Because the Deputies arrested Plaintiff after determining that his name, address, and license number matched the information listed on the warrant, whether or not he had a criminal record was not considered at the time of the arrest. Moreover, Plaintiff was arrested at 9:40 p.m. and the LiveScan report indicating that Plaintiff did not have a CII number in the database was not returned

until 11:10 p.m. Therefore, probable cause existed for Plaintiff's arrest.

Because Plaintiff fails to present sufficient evidence to show that he was deprived of his Fourth Amendment constitutional rights by Defendants and their employees, Plaintiff cannot maintain a Fourth Amendment § 1983 claim against municipality Defendants.

For these reasons, the Court **GRANTS** summary judgment to Defendants on Plaintiff's Fourth Amendment § 1983 claim.

### 2. Fourteenth Amendment § 1983 Claims

 The Fourteenth Amendment's Due Process Clause protects individuals against deprivations of liberty without due process of law. U.S. Const. Amend. XIV. Prior to a criminal conviction, an individual cannot be detained except upon a showing of probable cause either before or just after arrest. *Baker,* 443 U.S. at 142, 99 S.Ct. 2689. An arrest pursuant to a valid warrant ordinarily meets this standard. *Id.* at 143, 99 S.Ct. 2689. However, if an individual is mistakenly incarcerated, "detention pursuant to a valid warrant but in the face of repeated protests of innocence" can give rise to a due process claim "after the lapse of a certain amount of time." *Id.* at 145, 99 S.Ct. 2689. The Ninth Circuit has explained that a detainee's loss of liberty can give rise to a due process claim at the point when detaining officials know or

---

8. Plaintiff attempts to advance a "failure to train" theory in his Opposition by arguing that the LASD "has never trained Jimenez on the use of CII numbers or their significance." (Opp'n at 5.) But, as Defendants correctly note, Plaintiff cannot raise an issue for the first time on summary judgment. (Reply at 13.) "[T]heories of liability ... must be alleged in the complaint in order to provide the basis for later trial or summary judgment."

*Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1291–92 (9th Cir.2000) (explaining that theories of liability must be alleged in the complaint because it "guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations.") Therefore, the Court will not consider Plaintiff's failure to train argument.

should know that the detainee is entitled to release. *Lee,* 250 F.3d at 683.

Plaintiff can prevail on his Fourteenth Amendment claim against Defendants if he can show not only that he suffered an unconstitutional deprivation of liberty, but also that the deprivation resulted from a municipal custom or policy evincing "deliberate indifference to Plaintiff's constitutional rights." *See Lee,* 250 F.3d at 681–82 (internal quotations and alterations omitted).

■ Plaintiff presents several arguments to support his contention that Defendants knew or should have known that he was entitled to release prior to the dismissal of the case against him on May 4, 2009. (*See generally* Opp'n at 7.) However, the Court need not reach the question of whether Defendants infringed Plaintiff's Fourteenth Amendment rights because, even assuming a violation, Plaintiff has not pointed to any custom or policy which would support *Monell* liability. Specifically, Plaintiff fails to present any evidence to show that his continued detention, beyond the point at which Defendants allegedly knew or should have known he was entitled to release, was pursuant to policy or custom evincing deliberate indifference to his constitutional rights.

■ Plaintiff attempts to argue that Defendants admitted that the alleged constitutional violation occurred pursuant to their custom or policy. During oral argument, Plaintiff's counsel contended that Defendants' Fed.R.Civ.P. 30(b)(6) agent, Sergeant Gregory Key, admitted that the alleged unconstitutional detention of Plaintiff on the warrant was in accordance with LASD policy. (*See also* Opp'n at 12.) Defendants counter, however, that Sergeant Key did not admit that the alleged unconstitutional violations were in accordance with LASD policy. Defendants also submit that Plaintiff's counsel's question was objectionable because it was vague and ambiguous. (Reply at 15; Cook Decl., Ex. L [Key Depo.] at 50–51.) The relevant portion of Sergeant Key's deposition reads as follows:

BY MR. COOK:

Q. That's what I'm saying. Move to strike as nonresponsive. What I'm trying to get at, sergeant, is that the booking on the warrant was in accordance with sheriff's department policy. Now, it's true obviously there's a lot of matches here between a lot of the descriptors, you know, name, birth date, address, physical descriptors. No argument, no dispute about that. But we also know there are some fairly serious red flags here. We've covered that. That's past history.

A. Okay.

Q. I'm on to was the booking in this case in accordance with sheriff's department policy? That's the question.

MR. CARON: Objection. Calls for speculation, assumes facts not in evidence. It's vague and ambiguous as to the terms "policy" and "booking," and it's an incomplete hypothetical. Specifically it assumes that the fingerprints were requested by RIB. You can answer.

THE WITNESS: Yes.

BY MR. COOK:

Q. Was the incarceration of the plaintiff Mr. Reed on the warrant Exhibit G in accordance with sheriff's department policy?

MR. CARON: Same objections.

THE WITNESS: Yes.

(Cook Decl., Ex. L at 50–51.)

Here, the Court does not find Sergeant Key's statement to be a specific admission that the alleged unconstitutional detention of Plaintiff was in accordance with LASD

policy for two reasons. First, as Defendants' counsel noted by objection, the questions presented to Sergeant Key—whether "the booking" and the "incarceration of the plaintiff . . . on the warrant"—were "in accordance with sheriff's department policy"—were vague and ambiguous. Plaintiff's attorney did not specify to which aspects of the "booking" or the "incarceration" the question referred. Moreover, just prior to asking the questions at issue, Plaintiff's counsel stated that the "red flags" in the booking process were "past history" because they had "covered that." *Id.* Plaintiff's counsel then explained to Sergeant Key that he was "on to . . . the booking in this case." *Id.* Therefore, Plaintiff's counsel's line of questioning could have been interpreted as follows: "[R]ed flags" aside, were the booking and incarceration "in accordance with sheriff's department policy"?

Second, Sergeant Key's description of the booking process in his declaration does not include a description of the disputed warrant verification procedure or the policy requiring a fingerprint comparison. (Reply at 15.) Rather, Sergeant Key describes booking as involving eight components: (1) completing the arrestee's booking slip; (2) generating a Warrant Information Sheet; (3) review of the Warrant Information Sheet by the arresting deputy who brought the arrestee to the Detention Center to ensure that the arrestee's identifiers match the identifiers on the Warrant Information Sheet; (4) review of the Warrant Information Sheet by

booking personnel to ensure that the arrestee's identifiers match the identifiers on the Warrant Information Sheet; (5) completing the arrestee's booking and property record and medical screening paperwork; (6) collecting and inventorying the arrestee's property; (7) fingerprinting the arrestee via livescan; and (8) taking the arrestee's booking photograph. (Key Decl. ¶ 5.)[9] This declaration suggests that Sergeant Key's view of the booking and incarceration of Plaintiff focuses on the administrative aspects of the process, which were all completed in this case. Therefore, the Court does not find that Sergeant Key's statement serves as an admission that the alleged Fourteenth Amendment violations—regarding the failure to timely compare fingerprints or respond to Plaintiff's complaints—occurred pursuant to Defendants' policy or custom.

Plaintiff also argues that "[n]otwithstanding the purported existence of a 'disputed warrant verification procedure', in actual practice LASD personnel regularly ignore prisoner's complaints that they are being wrongly held on warrants meant for others." (Opp'n at 6.) Despite this assertion, Plaintiff fails to present admissible evidence to show that LASD has a custom or policy of ignoring complaints. Plaintiff attempts to submit evidence of the number of inmates released from L.A. County Jail because they were the wrong defendant compared with the number of individuals listed in the disputed warrant verification log as well as testimony and declarations of Plaintiff's counsel's clients

9. Plaintiff objects to paragraph 5 of the Key Declaration based on the argument that the testimony is irrelevant. (Pl.'s Evidentiary Objections to the Declarations of Gregory Key, Sergio Jimenez, and Scott Caron; docket no. 20 at 2.) Plaintiff contends that Defendants have admitted that booking of Plaintiff on warrant # ING9IG0112001 was in accordance with Defendants' custom, policy,

and/or practice. (*Id.*) Defendants respond that the testimony is relevant to define the term "booking." (Defendants' Response to Plaintiff's Evidentiary Objections; docket no. 40 at 2–3.) Here, the Court finds that the declaration is admissible and relevant to explain Sergeant Key's definition of the booking process.

in other matters who also alleged that their complaints of mistaken identity were ignored. (Cook Decl. ¶¶ 12–13.) However, just as Judge Snyder found when presented with similar evidence in *Reyes v. City of Glendale,* this Court finds that, even if admissible, the "evidence ... is too speculative to raise an issue of fact as to whether [Defendants], in contravention of the official ... program, routinely ignored complaints of mistaken identify such that they are subject to *Monell* liability." No. 05–0253, 2009 WL 2241602 at *19, 2009 U.S. Dist. LEXIS 76323 at *64 (C.D.Cal. July 23, 2009); *see also, Trevino v. Gates,* 99 F.3d 911, 920 (9th Cir.1996) ("Viewing plaintiff's evidence in the light most favorable to her, the undisputed evidence falls far short of establishing a persistent and widespread practice such that it constitutes permanent and well settled city policy.") (internal quotations omitted). Absent an evidentiary showing to support his contention that a custom or policy was the moving force behind the alleged constitutional violation, Plaintiff cannot make out a *Monell* claim against Defendants.

The Court accordingly **GRANTS** summary judgment to Defendants on Plaintiff's Fourteenth Amendment § 1983 claim.

## B. Claims Against Sheriff Lee Baca in His Individual Capacity

Finally, Defendants argue that Plaintiff fails to show any personal involvement or knowledge of the alleged constitutional deprivations to support a claim against Baca in his individual capacity. (Motion at 20.) The Court agrees.

■ "[I]ndividual liability under § 1983 arises only upon a showing of personal participation by the defendant." *Avalos v. Baca,* 596 F.3d 583, 587 n. 3 (9th Cir.2010) (citing *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989) and *Fayle v. Stapley,* 607

F.2d 858, 862 (9th Cir.1979)). In *Avalos,* when a plaintiff claiming over-detention failed to present any evidence that defendants sued in their individual capacity had any "direct contact" with the plaintiff or "actual knowledge" of his incarceration, the circuit court found that summary judgment was properly granted. *Id.* at 587. On the other hand, when a police chief "condoned, ratified, and encouraged" excessive use of force by his officers, the court upheld the verdict against the police chief in his individual capacity. *Larez v. City of Los Angeles,* 946 F.2d 630, 646 (9th Cir.1991). The plaintiff in *Larez* presented evidence that the police chief failed to discipline individual officers for excessive use of force, failed to establish new procedures for averting excessive use of force in the future, and ratified the excessive force used when he signed a letter which dismissed plaintiff's complaints. *Id.*

■ Here, like in *Avalos,* Plaintiff presents no evidence to show that Baca had any direct contact with him or actual knowledge of the claimed constitutional violations. Further, Plaintiff presents no evidence that Baca condoned, ratified, or encouraged the alleged constitutional violations in any way. Therefore, the Court GRANTS the Motion as to Baca in his individual capacity.

## C. Plaintiffs' State–Law Claims

Because the Court grants summary judgment to Defendants on Plaintiff's federal-law claims, only Plaintiff's state-law claims remain. Under the supplemental jurisdiction statute, a district court may decline to exercise supplemental jurisdiction over a claim either when the state-law claim substantially predominates over the federal-law claims or when the court has dismissed all the claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(2), (3).

In fact, the Ninth Circuit has stated a preference that a district court not exercise supplemental jurisdiction over a plaintiff's state-law claims when the court has dismissed the plaintiff's federal-law claims before trial. *See Acri v. Varian Assocs., Inc.,* 114 F.3d 999, 1001 (9th Cir. 1997) ("The Supreme Court has stated, and we have often repeated, that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims.'") (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)) (ellipsis in original). Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims.

## IV.

### CONCLUSION

For these reasons, the Court GRANTS Defendants' Motions for Summary Judgment (docket no. 18) as to Plaintiffs' first and second claims and declines to exercise supplemental jurisdiction over Plaintiffs' third, fourth, and fifth claims.

IT IS SO ORDERED.